Filed 10/7/25 P. v. Hernandez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ISRAEL SANTIAGO HERNANDEZ,<br><br>     Defendant and Appellant. | B340353<br><br>(Los Angeles County<br>Super. Ct. No. 23ARCF00174-01) |

APPEAL from a judgment of the Superior Court of Los Angeles County. James P. Cooper III, Commissioner. Reversed and remanded with directions.

Keilana Truong, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Stephanie C. Brenan and Jonathan M. Krauss, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

# INTRODUCTION

Israel Santiago Hernandez was convicted of felony assault (Pen. Code,[1] § 245, subd. (a)(4)) and sentenced to the upper term of four years. On appeal, Hernandez argues the trial court erred in imposing the upper term based on his status on probation and two prior misdemeanor convictions. We conclude the trial court improperly relied on unproven aggravating factors related to Hernandez's status and performance on probation in imposing the upper term sentence. We further conclude the error was prejudicial because a jury rationally could find that at least one of the aggravating factors on which the trial court relied was not true. We accordingly reverse and remand for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Charges

In an information, Hernandez was charged with one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). The information also alleged that the charged offense was a hate crime (§ 422.75, subd. (a)), and that Hernandez personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). It further alleged, as aggravating factors, that Hernandez committed a hate crime (Cal. Rules of Court, rule 4.421(c)), and that the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1)).

---

[1] Unless otherwise stated, all further undesignated statutory references are to the Penal Code.

## 2.     Evidence at trial

On the morning of December 20, 2023, Debra Ansell was driving on Santa Monica Boulevard when she saw Hernandez and another man in the intersection.  The other man was on the ground, and Hernandez "was standing over him, punching down at him."  Ansell saw Hernandez make contact with the man's face or upper body once.  She also saw Hernandez swing his arm toward the man several more times, but she did not know if those punches landed.  The man did not fight back, and instead tried to cover himself on the ground.  After several cycles of punching down at the man, Hernandez turned and walked away.

While in her car, Ansell took a photo of Hernandez with her cell phone and called 911.  Shen then got out of the car and went to assist the man on the ground.  Ansell saw that the man was bleeding profusely from his mouth, and appeared to be missing a couple of teeth.  He was also moving very slowly and seemed meek.  Once the police arrived, Ansell told them what she saw and shared the photo of Hernandez.

Los Angeles police officer Brent Baker-Dunlap responded to the scene and met with the injured man.  The officer observed that the man was approximately 60 years old and five feet, eight inches in height.  He had a laceration on his bottom lip, a cut on his chin, blood inside his mouth, and several missing teeth.  He appeared scared, feeble, and disoriented.  While the man was being tended to in an ambulance, Officer Baker-Dunlap and his partner searched the area and found Hernandez about one block from the scene.  When the officers approached, Hernandez refused to follow their orders.  He appeared to be under the influence of alcohol and told the officers that he used methamphetamine.

Los Angeles police detective Jaime Martinez interviewed Hernandez shortly after his arrest. During the interview, Hernandez became agitated. At one point, Hernandez assumed a fighting stance, called the detective a derogatory name, and threatened to hurt him. Early in the investigation, Detective Martinez contacted the victim. However, by the time of trial, the victim's whereabouts were unknown.

### 3. Jury verdict and sentencing

The jury found Hernandez guilty of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), but found the enhancement allegation that Hernandez personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)) to be not true. At the People's request, the trial court dismissed the hate-crime enhancement allegation (§ 422.75, subd. (a)), and the two aggravating factor allegations (Cal. Rules of Court, rule 4.421(a)(1), (c)) under section 1385.

The sentencing hearing was held on April 26, 2024. At the start of the hearing, the trial court indicated that it intended to impose the high term. In response, defense counsel argued that probation was warranted because Hernandez had a minimal criminal record with only two misdemeanor convictions, there was evidence of substance abuse, and the jury found the great-bodily-injury enhancement to be not true. The court stated that it considered imposing the low term, but it did not find any of the factors in section 1170, subdivision (b)(6) to be present. The court also acknowledged that there was a statutory presumption in favor of the middle term, but noted that Hernandez had prior convictions for misdemeanor trespass and misdemeanor battery, and that "those two convictions, by itself, are enough to support the high-term."

4

The court stated that it "searched long and hard" for mitigating factors, but there were none. The court found that Hernandez was not a passive participant or a minor role player in the offense, and that the crime was not the result of an unusual circumstance that was unlikely to recur. In support of this finding, the court noted that Hernandez had two other pending battery charges as well as a previously dismissed battery charge, and that this "history shows that he has a propensity for putting his hands on people and taking names." The court also found that Hernandez was not coerced or induced by others to commit the offense, but instead "he does appear to have an apparent predisposition to use force and violence against other people." In addition, the court found that there was no evidence that Hernandez exercised caution to avoid harm to the victim, but rather "the evidence is undisputed that [he] inflicted significant harm" upon the victim and "left him laying in the street."

Defense counsel responded that Hernandez's misdemeanor convictions did not justify the high term, and that the remaining facts that the court put on the record were not found true by the jury, including the great-bodily-injury enhancement. Defense counsel also argued that the evidence showed that Hernandez was under the influence of alcohol or drugs when he committed the current offense. In rejecting these arguments, the court explained that, even if Hernandez was under the influence of drugs, it "doesn't mean that he didn't know what he was doing." The court stated that the evidence was "undisputed" that Hernandez "put a beatdown" on the victim, who appeared to be "older" and "significantly smaller" than him. The court further asserted that the jury's not-true finding on the great-bodily-

5

injury enhancement was "not inconsistent with [the victim] suffering a significant injury" because the standard was "different."

The court again referenced Hernandez's "history" and the "pending two battery offenses." The court then raised Hernandez's probationary status, stating: "[H]e is still on probation on one of those misdemeanors. . . . [H]e failed to appear and the court issued a warrant. . . . So March 8, 2022, case number 1AR01281, your client was supposed to appear. He didn't show up. Ironically, he had been arrested on November 9, 2021, on the warrant he had been cited out. He failed to appear on the date he had promised to appear on, so the court issued another warrant. So when he's on probation in 1AR01281, he then uses force and violence against John Doe." The court added that the defense was seeking leniency for Hernandez "when all that he's done is disobeyed court orders" and "repeatedly used his hands on people."

In response, defense counsel reiterated that Hernandez's two misdemeanor convictions did not, on their own, warrant a high-term sentence, and that the other facts referenced by the court could not be used "as aggravators either since they were not found." The court replied that those facts were not being used to find the presence of aggravating factors, but rather the absence of mitigating factors, which did not need to be proven beyond a reasonable doubt. At the conclusion of the hearing, the court sentenced Hernandez to the upper term of four years to be served in county jail.

Hernandez filed a timely appeal.

## DISCUSSION

On appeal, Hernandez challenges the trial court's decision to impose an upper term sentence. Hernandez argues the trial

6

court erred when it stated that he was on probation at the time of the current offense, and abused its discretion because the severity of his prior misdemeanor convictions did not justify a sentence exceeding the middle term. In their briefing, the People assert Hernandez forfeited his claim regarding his probationary status by failing to object, and even if the trial court improperly considered this factor, it relied on several other aggravating factors that justified the imposition of the upper term. After the briefing in this case was completed, the California Supreme Court issued its decision in *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*), which considered whether a defendant is entitled to a jury trial on certain aggravating factors related to his or her criminal history. Following the *Wiley* decision, Hernandez submitted a letter informing the court of this new authority and its potential relevance to his appeal. (Cal. Rules of Court, rule 8.254.)

Based on *Wiley* and the record in this case, we conclude the trial court erred in imposing the upper term sentence because Hernandez was entitled to a jury trial on the aggravating factors related to his status and performance on probation. Because we cannot conclude beyond a reasonable doubt that a jury would have found each aggravating factor relied upon by the trial court to be true, the matter must be remanded for resentencing.

1.    **Governing law**

Under the Sixth Amendment to the United States Constitution, "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281; accord, *Erlinger v. United States* (2024)

7

602 U.S. 821, 830–832.)  The Sixth Amendment thus prohibits a court from imposing a higher sentence "based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham v. California*, at p. 275.)

California's determinate sentencing scheme incorporates this constitutional principle. (*People v. Lynch* (2024) 16 Cal.5th 730, 759–761 (*Lynch*).)  Section 1170, subdivision (b) provides, in relevant part, that where a statute specifies three possible terms of imprisonment, the court "may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify" the upper term and "the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subds. (b)(1), (b)(2).) However, as an exception to this rule, the court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Id.*, subd. (b)(3).)  The statute therefore "requires that, excepting prior convictions and in the absence of a waiver or stipulation, aggravating facts relied upon to justify an upper term must be resolved by the jury beyond a reasonable doubt." (*Lynch*, at p. 755.)

California Rules of Court, rule 4.421 (Rule 4.421) sets forth a nonexhaustive list of aggravating sentencing factors that may be used to increase a defendant's sentence to the upper term under section 1170, subdivision (b).  Factors related to the charged crime include:  "(1) The crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; [¶] (2) The defendant was armed with or used a weapon at the time

8

of the commission of the crime; [and] [¶] (3) The victim was particularly vulnerable." (Rule 4.421(a)(1)–(3).) Factors related to the defendant include: "(1) The defendant has engaged in violent conduct that indicates a serious danger to society; [¶] (2) The defendant's prior convictions . . . are numerous or of increasing seriousness; [¶] (3) The defendant has served a prior term in prison or county jail under section 1170(h); [¶] (4) The defendant was on probation . . . or parole when the crime was committed; and [¶]  (5) The defendant's prior performance on probation . . . or parole was unsatisfactory." (Rule 4.421(b)(1)–(5).)  In addition, the court may consider "[a]ny other factors . . . that reasonably relate to the defendant or the circumstances under which the crime was committed." (Rule 4.421(c).)

In *Lynch*, our Supreme Court held that, under section 1170, subdivision (b), "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, *supra*, 16 Cal.5th at p. 768.)  Applying the harmless error standard in *Chapman v. California* (1967) 386 U.S. 18, the court further held that "[t]he violation is prejudicial unless an appellate court can conclude beyond a reasonable doubt that a jury would have found true all of the aggravating facts relied upon by the trial court to justify an upper term sentence, or that those facts were otherwise proved true in compliance with the current statutory requirements.  If the reviewing court cannot so determine, applying the *Chapman* standard of review, the defendant is entitled to a remand for resentencing." (*Lynch*, at p. 768.)

More recently, in *Wiley*, the Supreme Court considered the scope of the right to a jury trial on aggravating sentencing factors

9

and the exception to this right for a defendant's prior convictions. (*Wiley*, *supra*, 17 Cal.5th at 1076.)  The court recognized that, under the Sixth Amendment and section 1170, subdivision (b), "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Wiley*, at p. 1086, fn. omitted.)  The court held that this right to a jury trial extends to the aggravating factor that a defendant's prior convictions were of "increasing seriousness." (*Wiley*, at p. 1082.)  It also extends to the aggravating factor that a defendant's prior performance on probation or parole was "unsatisfactory." (*Id*. at p. 1083.)  Accordingly, absent a proper waiver or stipulation, a defendant is "entitled to have a jury determine whether his prior convictions were of increasing seriousness and whether he had performed unsatisfactorily on probation, before the court could rely on those aggravating facts to find justification for an upper term sentence." (*Id*. at p. 1085.)

2.     **The trial court prejudicially erred in imposing the upper term based on unproven aggravating factors related to Hernandez's probation**

The record reflects that, in sentencing Hernandez to the upper term, the trial court relied on three aggravating factors related to his criminal history:  (1) his two prior misdemeanor convictions for trespass and battery; (2) his failure to appear in court while on probation in the battery case; and (3) his commission of the current offense while on probation in the battery case.  However, consistent with the holding in *Wiley*, Hernandez was entitled to have a jury determine whether his performance on probation was unsatisfactory (Rule 4.421(b)(5)),

10

and whether he was on probation when he committed the current offense (Rule 4.421(b)(4)). Because Hernandez did not waive his right to a jury trial on these factors or stipulate to their truth, the trial court could not use them to justify an upper term sentence.

As the Supreme Court explained in *Wiley*, the aggravating factor that the defendant performed unsatisfactorily on probation "may be proved 'by evidence demonstrating that, while previously on probation or parole, [the defendant] committed and was convicted of new offenses.' [Citation.] Alternatively, proof may be 'based upon other evidence of misconduct that was not previously adjudicated in a criminal trial' such as evidence that the defendant 'did not appear for appointments, failed a drug test, or stopped attending counseling sessions as directed.' [Citation.] The latter circumstances clearly go beyond the fact of prior conviction and its elements. [Citation.] And even where a finding of unsatisfactory probation performance is based on conviction of a new offense, it is not strictly limited to that fact. Rather, it must be proven that the defendant was ordered to serve a term of probation and remained on probation at the time he or she committed the new offense. These facts, too, go beyond the mere existence of a prior conviction and its elements." (*Wiley*, *supra*, 17 Cal.5th at 1083.)

In this case, a finding that Hernandez was on probation when he committed the current offense would require proof that he was "ordered to serve a term of probation" in a prior case, and that he "remained on probation at the time he . . . committed the [current] offense." (*Wiley*, *supra*, 17 Cal.5th at p. 1083.) A finding that Hernandez's performance on probation was unsatisfactory likewise would require proof that he either committed a new offense or engaged in some other form of

11

misconduct while serving a probationary sentence. (*Ibid.*) Because these facts "go beyond the mere existence of a prior conviction and its elements," Hernandez was entitled to have a jury determine whether they were true beyond a reasonable doubt. (*Ibid.*) As the *Wiley* court observed, "[t]his jury trial guarantee retains its vitality even if the inquiry is ' " 'straightforward.' " ' " (*Id.* at p. 1084.) "Only when aggravating facts have been proven as the Constitution requires may the court then rely on them to conclude, in its discretion, that those facts justify an upper term." (*Ibid.*)

Because Hernandez was deprived of a jury trial on at least one of the aggravating factors that the trial court used to justify the upper term sentence, we must apply the *Chapman* standard of review to determine if the error was prejudicial. (*Wiley*, *supra*, 17 Cal.5th at p. 1087; *Lynch*, *supra*, 16 Cal.5th at pp. 742–743.) Under that standard, a remand for resentencing is required unless we can conclude "beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the [trial] court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance" with section 1170, subdivision (b). (*Lynch*, at p. 743.) "Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue." (*Wiley*, at p. 1087.)

Here, the error was not harmless because, as Hernandez contends, his record of conviction indicates that he was not on probation at the time of the current offense. According to these records, on July 26, 2021, Hernandez was sentenced to 12 months of probation in the misdemeanor battery case and 12 months of

probation in the misdemeanor trespass case.  The trial court later summarily revoked the probation in the battery case, and set a probation violation hearing in both cases for March 8, 2022.  However, for reasons that are not clear from record, the court never held a probation violation hearing or terminated probation in either case.  As a result, Hernandez's probationary term in each case expired on July 26, 2022, 12 months after it was originally imposed.  (See *People v. Leiva* (2013) 56 Cal.4th 498, 509, 515 [summary revocation of probation preserves the trial court's authority to adjudicate a probation violation claim, but does not automatically extend the conditions of probation beyond the expiration of the court-imposed probationary period].)  It thus appears that, as of December 20, 2023—the date of the offense in this case—Hernandez was no longer on probation.  Under these circumstances, a rational jury could find that the aggravating factors related to Hernandez's status and performance on probation were not true beyond a reasonable doubt.

In their respondent's brief, the People argue Hernandez forfeited his claim that the trial court improperly relied on his probationary status in imposing the upper term because defense counsel did not object to the court's statement about Hernandez being on probation at the time of the current offense.  Although defense counsel did not dispute the factual accuracy of the trial court's statement at the sentencing hearing, she did object to the court's use of aggravating factors that were not found true by the jury.  In particular, after the court raised Hernandez's status and performance on probation as additional factors that justified the upper term, defense counsel asked to "make a brief record" in response to the court's remarks.  Defense counsel then argued that Hernandez's prior misdemeanor convictions did not warrant

13

the upper term, and that she did not believe "any other facts that the court mentioned can be used as aggravators . . . since they were not found." This was sufficient to preserve a claim of error based on the trial court's reliance upon unproven aggravating factors to impose an upper term sentence. In light of this conclusion, we need not consider the parties' arguments regarding whether the defense counsel rendered ineffective assistance in failing to object to the trial court's misstatement of fact about Hernandez's status on probation.

The People further contend that, even if the trial court improperly relied on Hernandez's probationary status, it did not abuse its discretion in imposing the upper term because it based its decision on several other aggravating factors along with a dearth of mitigating factors. As described by the People, the aggravating factors on which the trial court relied in imposing the upper term included that Hernandez inflicted significant harm on the victim during the assault (Rule 4.421(a)(1)), the victim appeared older and significantly smaller than Hernandez (Rule 4.421(a)(3)), and Hernandez's criminal history showed a predisposition for committing violence against other people (Rule 4.421(b)(1), (b)(2)). However, as Hernandez correctly asserts, the trial court could not have properly relied upon these additional aggravating factors cited by the People because none of them were found true by a jury or stipulated to by Hernandez.

In any event, we need not decide whether the trial court based its sentencing decision on any aggravating factors other than (1) Hernandez's prior misdemeanor convictions, (2) his prior performance on probation, and (3) his status on probation at the time of the current offense. Assuming that the trial court solely relied upon these three factors in imposing the upper term, it

14

erred in doing so because Hernandez was entitled to have a jury decide whether his performance on probation was unsatisfactory and whether he remained on probation at the time he committed the current offense.  As our Supreme Court explained, "the facts supporting *every* aggravating circumstance upon which the trial court relies to 'justify' imposition of the upper term must be properly proven" (*Lynch*, *supra*, 16 Cal.5th at p. 757), and "[w]hen the trial court *actually relies* on improperly proven aggravating facts to 'justify' an upper term sentence, a Sixth Amendment violation occurs and *Chapman* must be satisfied" (*id.* at p. 761).  In this case, because the record does not support at least one of the aggravating factors on which the trial court expressly based its sentencing decision, we cannot conclude that "the omission of a jury trial was harmless beyond a reasonable doubt as to *every* aggravating fact the trial court used to justify an upper term sentence."  (*Id.* at p. 775.)  Hernandez accordingly is entitled to a remand for resentencing.

**DISPOSITION**

Hernandez's conviction is affirmed. The judgment imposing an upper term sentence on count 1 is reversed, and the matter is remanded with directions for the trial court to conduct further proceedings under section 1170, subdivision (b).

VIRAMONTES, J.

WE CONCUR:

WILEY, Acting P. J.

RUBIN, J.*

---

\*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.